Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| LUIS J. ACEVEDO MATÍAS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202300582 | *REVISIÓN ADMINISTRATIVA* procedente de la División de Remedios Administrativos<br><br>Caso número: CDO-348-2023 |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 25 de enero de 2024.

Comparece ante nos, por derecho propio, la parte recurrente, Luis J. Acevedo Matías, mediante revisión judicial y solicita que revoquemos la determinación emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación el 5 de septiembre de 2023, notificada al día siguiente. Mediante el referido dictamen, la agencia denegó la solicitud de remedio administrativo promovida por el recurrente.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida. Veamos.

## I

El 31 de julio de 2023, recibida el 7 de agosto del mismo año, Luis J. Acevedo Matías (Acevedo Matías o recurrente) instó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrido).[1] En la misma, solicitó que se le aplicara la Ley Núm. 66-2022, relacionada con ciertas bonificaciones. En particular, indicó que, desde el 21 de abril de 2021 hasta el 8 de julio de 2022, había participado de un programa agrícola en el pueblo de Arecibo, mientras se encontraba cumpliendo –de forma

---

[1] Véase, *Solicitud de Remedio Administrativo* en el expediente administrativo.

Número Identificador

SEN2024 _____

alternativa– con una sentencia penal de tres (3) años en su contra. Alegó que, al momento de solicitar una bonificación, solo le aplicaron por buena conducta, mas no por el tiempo que laboró en el programa agrícola. En virtud de ello, reclamó la bonificación de un (1) año, dos (2) meses y diecisiete (17) días, aproximadamente, por los referidos trabajos realizados.

Evaluado lo anterior, el 5 de septiembre de 2023, notificada al día siguiente, el DCR emitió la determinación que nos ocupa, mediante la cual denegó el remedio solicitado.[2] En la misma, anejó copia de la *Respuesta del Área Concernida*, la cual reza como sigue:

> En respuesta a la queja del confinado[,] le informo que la Ley [Núm.] 66-2022 establece que ser[á]n acreedores para bonificacion[es] adicionales los [miembros de la población correccional] que se encuentran disfrutando de libertad bajo palabra y se encuentran laborando o estudiando. La misma no es de aplicabilidad a los casos que est[á]n o estaban en probatoria.

En desacuerdo, el 6 de septiembre de 2023, recibida el 11 del mismo mes y año, Acevedo Matías presentó una *Solicitud de Reconsideración*.[3] En síntesis, sostuvo que de la Exposición de Motivos de la Ley Núm. 66-2022 surgía que el propósito del citado estatuto era extender el beneficio de bonificación a toda persona que se encontraba cumpliendo una sentencia bajo algún mecanismo alterno a la prisión; entiéndase, aquellas personas en libertad bajo palabra, entre otros. Sobre ese particular, arguyó que las palabras "alterno" y "otros", utilizadas en la Exposición de Motivos de la referida pieza legislativa, significaba que no había impedimento para que le aplicaran dicha ley. Planteó que, lo contrario, violaba la igual protección de las leyes y el debido proceso de ley. Por ello, reiteró su solicitud de bonificación.

Atendida la solicitud, el 2 de octubre de 2023, el DCR denegó la reconsideración.[4] En específico, fundamentó su decisión de la siguiente forma:

---

[2] Véase, *Respuesta al Miembro de la Población Correccional* en el expediente administrativo.

[3] Véase, *Solicitud de Reconsideración* en el expediente administrativo.

[4] Véase, *Respuesta de Reconsideración al Miembro de la Población Correccional* en el expediente administrativo.

Con relación a su solicitud de reconsideración, se evaluó con el personal del área de r[é]cord penal CDO en Mayagüez[.] Para su conocimiento[,] con relación a la Ley [Núm.] 66[-2022], [t]oda persona sentenciada a cumplir [un] término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con los *[sic]* dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación o disfrutando de libertad bajo palabra. Recuerde que esto es para confinados que estén en [p]rogramas fuera de la [i]nstitución [c]arcelaria. Mientras tanto *[sic]* continúe cumpliendo en una [i]nstitución, [n]o le aplica la [L]ey [Núm.] 66[-2022]. Si hubiera [una] nueva directriz con relación a esta Ley [Núm.] 66[-2022] por parte del Departamento de Corrección de Nivel Central, se le dejará saber al respecto.

Inconforme, el 13 de octubre de 2023, recibida en la Secretaría de este Foro el 9 de noviembre de 2023, la parte recurrente presentó el recurso de revisión judicial que hoy nos ocupa. En su escrito, impugna la determinación administrativa antes indicada y nos solicita que la dejemos sin efecto.

Por su parte, el 8 de enero de 2024, la parte recurrida compareció mediante *Escrito en Cumplimiento de Resolución*. En esencia, sostiene que la Ley Núm. 66-2022 aplica a aquellos miembros de la población correccional que, al estar en libertad bajo palabra, no se les brindaba el beneficio de las bonificaciones que ya gozan los confinados. En ese sentido, plantea que los trabajos realizados por el recurrente en el programa agrícola no fueron ejecutados mientras este se encontraba en libertad bajo palabra.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea

Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), "estableció el marco de revisión judicial de las determinaciones de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG*

*v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I. A raíz de ello, el Artículo 5, inciso f del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII, Art. 5(f) (Plan de Reorganización Núm. 2-2011), le reconoce al DCR la facultad y deber de "ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables".

Conforme a ello, los Artículos 11 y 12 del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 11 y 12, establecen el modo en que se deben computar las bonificaciones, ya sea por buena conducta y asiduidad o por estudio, trabajo y servicios. Ahora bien, originalmente, el Artículo 11 disponía que las bonificaciones solo aplicaban a personas sentenciadas previo a la vigencia del Código Penal de 2004, ya que el mismo eliminó las bonificaciones automáticas por buena conducta y

asiduidad. Debido a ello, para efectos de la aplicación de las bonificaciones, la población penal se dividió en: (1) aquellos sentenciados bajo el Código Penal de 1974, los cuales cuentan con derecho a las bonificaciones; y (2) en los sentenciados bajo el Código Penal de 2004, los cuales no tienen derecho a las bonificaciones por buena conducta y asiduidad. Véase, Exposición de Motivos de la Ley Núm. 87-2020.

Ante las incongruencias de dicho esquema de bonificaciones, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 87-2020, para enmendar el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, con el fin de extenderle a toda la población correccional la oportunidad de solicitar la aplicación de las bonificaciones por buena conducta y asiduidad, sin distinción del Código Penal mediante el cual fueron sentenciados. La mencionada enmienda indicaba lo siguiente:

> Toda persona sentenciada a cumplir término de reclusión en cualquier institución, antes de la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación o disfrutando de libertad bajo palabra, que observare una buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate o desde que se concede la libertad bajo palabra. Exposición de Motivos de la Ley Núm. 87-2020.

No obstante, nuestra Asamblea Legislativa nuevamente enmendó el mencionado Artículo para reiterar que las bonificaciones también les aplicaban a aquellas personas convictas que estuvieren disfrutando de los beneficios de libertad bajo palabra, puesto que no se estaban concediendo. Véase, Exposición de Motivos de la Ley Núm. 66-2022. En particular, la Legislatura expresó que la Rama Ejecutiva había interpretado que los programas del DCR y de la Junta de Libertad Bajo Palabra (JLBP) eran distintos y mutuamente excluyentes y que, a diferencia de las instituciones correccionales, la JLBP no tenía una estructura administrativa para clasificar ni proveer tratamiento a las personas convictas liberadas. *Íd.* Por consiguiente, se aclaró que:

Estando la Junta de Libertad Bajo Palabra adscrita al Departamento de Corrección y Rehabilitación, no debe existir impedimento alguno para que se maximicen los recursos y se cumpla con el claro mandato legislativo de que las personas acogidas al privilegio de libertad bajo palabra también puedan reducir sus sentencias utilizando el mecanismo de bonificaciones. Exposición de Motivos de la Ley Núm. 66-2022.

En vista de ello, mediante la Ley Núm. 66-2022, nuestra Asamblea Legislativa incluyó un párrafo aclaratorio al Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, el cual dispone que:

Las rebajas de términos de sentencias dispuestas en este Artículo por buena conducta y asiduidad, aplicarán a toda persona sentenciada a cumplir término de reclusión bajo cualquier Código Penal de Puerto Rico o delito cometido bajo cualquier ley penal especial que en sus disposiciones no las excluya, independientemente se encuentre dentro de una institución correccional o esté cumpliendo el restante de su sentencia de reclusión a través de un permiso concedido a tenor con lo dispuesto en este Plan o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación **o se encuentre disfrutando de libertad bajo palabra**. 3 LPRA Ap. XVIII, Art. 11. (Énfasis nuestro).

En cuanto al Artículo 12 del Plan de Reorganización Núm. 2-2011, *supra*, el cual establece lo relacionado a las bonificaciones por trabajo, estudio o servicios, antes de ser enmendado por la Ley Núm. 66-2022, solo autorizaba al Secretario o Secretaria del DCR a conceder las bonificaciones. Sin embargo, la Ley Núm. 66-2022 enmendó el aludido Artículo para aclarar que las bonificaciones adicionales aplicarán a las personas convictas independientemente bajo qué Código Penal se hubiese sentenciado. Igualmente, debido a que no se estaba aplicando a aquellas personas convictas que se encontraban en libertad bajo palabra, incluyeron a la persona Presidenta de la JLBP como funcionaria autorizada para conceder las bonificaciones por estudio y trabajo.

Como resultado, en lo aquí atinente, la Ley Núm. 66-2022 aclara que las personas convictas que se encuentren en libertad bajo palabra tienen derecho a las bonificaciones por buena conducta, asiduidad, estudio, trabajo y otros servicios, según dispuesto en los Artículos 11 y 12 del Plan de Reorganización Núm. 2-2011, *supra*. Cónsono con lo anterior, la Sección 5 de la Ley Núm. 66-2022 ordenó al DCR y a la JLBP a que

adoptaran o enmendaran aquella reglamentación necesaria para poner en vigor lo establecido en dicho estatuto.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte recurrente le solicita a esta Curia que revoquemos la determinación emitida por el DCR el 5 de septiembre de 2023. En virtud de esta, el referido organismo administrativo denegó la bonificación solicitada por el recurrente bajo el fundamento de que la Ley Núm. 66-2022 no le era de aplicación a este. Sobre ese particular, el recurrente sostiene que el referido estatuto no es de aplicación solamente a las personas que se encuentran en libertad bajo palabra. Especificó que la intención legislativa de la Ley Núm. 66-2022 es que esta le sea aplicable a cualquier programa alterno a la reclusión, incluyendo las medias casas, los "grilletes" (libertad a prueba), entre otros. En vista de ello, solicita que le apliquen la bonificación de un (1) año, dos (2) meses y diecisiete (17) días, aproximadamente, por los trabajos que realizó en el mencionado programa agrícola, mientras se encontraba cumpliendo su pena en libertad a prueba.

Luego de un examen sosegado del expediente ante nos, así como de la ley aplicable, entendemos que la interpretación planteada por la parte recurrente no refleja la intención de la Asamblea Legislativa en la promulgación de la Ley Núm. 66-2022. De la Exposición de Motivos del citado estatuto, surge expresamente que su intención fue enmendar los Artículos 3, 11 y 12 del Plan de Reorganización Núm. 2-2011, *supra*, a los únicos fines de aclarar su lenguaje con el propósito de "que no quepa duda de que los convictos que estén disfrutando de los beneficios que concede la Junta de Libertad Bajo Palabra" también reciban las bonificaciones por buena conducta, asiduidad, trabajo, estudios y otros servicios, toda vez que estos le eran disponibles a los miembros de la población correccional. Es decir, el propósito primordial de la Ley Núm. 66-2022 es que se reconozca la aplicación del sistema de bonificaciones a las personas convictas que se

encuentran en libertad bajo palabra y que no se le había reconocido, ni acreditado, anteriormente. Contrario a lo propuesto por la parte recurrente, la citada ley no le es de aplicación a las personas convictas que se encuentran en libertad a prueba. Según surge del expediente y bajo la propia admisión del recurrente, este se encontraba en libertad a prueba mientras trabajó en el programa agrícola en cuestión. Por tanto, no le asiste la razón a la parte recurrente en el presente reclamo.

Asimismo, del recurso ante nos no se desprende razón alguna para intervenir con la decisión impugnada. La determinación del DCR se presume correcta y merece nuestra deferencia. Lo que surge del expediente es que, actualmente, el recurrente se beneficia del sistema de bonificación, según se desprende de la *Hoja Control sobre Liquidación de Sentencias* del recurrente.[5] Al evaluar dicho documento, colegimos que el DCR, de conformidad con el mandato del Plan de Reorganización Núm. 2-2011, *supra*, según enmendado por la Ley 87-2020, le está aplicando al recurrente unas bonificaciones por buena conducta y asiduidad. Ahora bien, el recurrente reclama la aplicación de la Ley Núm. 66-2022 en cuanto a unas bonificaciones por el trabajo realizado mientras se encontraba en libertad a prueba, por lo que, según mencionáramos, no le aplica por constituir una enmienda dirigida únicamente a quienes se encuentran en libertad bajo palabra. Así, pues, no encontramos prueba alguna en el expediente administrativo que demostrara que la determinación del DCR fue una irrazonable.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible al DCR. Por tanto, toda vez que el recurrente no derrotó la presunción de corrección de la resolución que nos ocupa, confirmamos la determinación administrativa recurrida.

---

[5] Véase, Anejo I del *Escrito en Cumplimiento de Resolución*.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones